Milligan J.,
delivered tlie opinion of the Court.
On the 23d of October, 1865, Robert P. Chambers, the plaintiff in error, shot and mortally wounded Isaac R. Porter. The latter lived only five days, and then died from the wound. But before his death, he brought an action of trespass vi et armis, in the Circuit Court of Carroll County, against Chambers, for “illegally shooting and mortally wounding him” — laying his damages at ten thousand dollars.
The process was returned to the January Term, 1866, when the declaration was filed, without revivor, in the name of the original plaintiff. The defendant appeared and pleaded to the declaration, “not guilty,” and a special plea of justification; in which he alleges that the shooting was done in his necessary self-defense, etc.
Without noticing further, the various motions, and apparent irregularities disclosed by the record, it will be sufficient for all the purposes of this case, to remark, that, at the September Term, 1866, the defendant suggested and proved the death of the plaintiff; and the cause was then continued on the application of the defendant at his costs, for which a judgment for the costs of the term, was formely rendered in the name of the decedent plaintiff, and execution awarded.
This cause was again continued at the January Term, 1867; and at the May Term, following, the de *275 fendant moved to abate the suit, which was overruled by the Court, and the action of the Court excepted to by the defendant.
At the September Term, 1867 the cause was submitted to a jury, who returned the following verdict, viz:, “They find the issues joined, in favor of the plaintiff, and assess Ms damages on account of the premises alleged in the declaration, at the sum of seventeen hundred dollars; and they also find that the plaintiff left as his widow, Lucinda A. Porter, and as his children and next of kin, William Porter, and Pocahontas Porter, his only heirs and distributees.”
Upon this verdict, the following judgment was pronounced : “It is therefore considered by the Court, that the said Lucinda A. Porter, William Porter and Pocahontas Porter, recover in the name of Isaac R. Porter, of the said defendant, the sum of seventeen hundred dollars, assessed by the jury aforesaid, and the costs of this cause.”
Motions for a new trial and in arrest of judgment were entered, and successively overruled, and an appeal in error, prosecuted to this Court.
Various questions have been raised in argument, and discussed with much zeal and earnestness on both sides. For the plaintiff, it is insisted, that, as the action was brought in the life time of the plaintiff, it is competent, under the provisions of the Code, secs. 2291, 2292, and 2293, to prosecute it without revivor, to final judgment. On the other hand, this construction is flatly denied as leading to results too palpably absurd to be tolerated for a moment.
1st, The language of the statute is as follows:
*276 “2291. The right of action which a person who dies from injuries received from another, or whose death is caused by the wrongful act, or omission of another, would have had against the wrong-doer, in case death had ensued, shall t not abate or be extinguished by his death, but shall pass to his personal representative, for the benefit of his widow and next kin, free from the claims of his creditors.
“2292. The action may be instituted by the personal representative of the deceased; but, if he decline it the widow and children of the deceased, may, without the consent of the representative, use his name in bringing and prosecuting the suit,. on giving bond and security for costs, or in the form prescribed for paupers. The personal representative shall not, in such case, be responsible for costs, unless he sign his name to the prosecution bond.
“2293. If the deceased had commenced an action before his death, it shall proceed without revivor. The damages shall go to the widow and next of kin, free from the claims of the creditors of the deceased, to be distributed as personal property.”
The common law rule, actio personalis moritur com-persona, prevailed in this State prior to the passage of the Act of 1851, ch. 17, when it was so far changed as to enable the personal representative of a person whose death was caused by the wrongful act or omission of another, to maintain an action against the latter, if the former or decedent, might have maintained an action against the latter for an injury caused by the same act or omission.
The Act of 1851, ch. 17, has been substantially *277 incorporated into the Code, at sec. 2291, with some modifications of phraseology; and the two succeeding sections, seem to have been original enactments, intended by the Legislature to facilitate in every way possible, the remedy saved by sec. 2292, to the widow and children. The personal representative may bring the action, but he has no power by declining to do so, to defeat the right of the widow and children in the use of his name, if they desire to bring and prosecute the action. All they are required to do, is, to give bond for cost, or otherwise avail themselves of the oath prescribed for paupers, and the action proceeds for their use.
But, when an action has been commenced by the deceased, before his death, can it, under sec. 2293, be prosecuted to final judgment without revivor? The language of the section is peremptory; and we are not 'prepared to say it is not in harmony with the preceding provisions of the same chapter. It goes, perhaps, one step further; but the same train of thought, and line of policy which dictated the preceding sections, are fully recognized in this section. It declares, if the deceased had commenced an action before his death, it shall proceed without revivor. The object of the Legislature seems to have been not to embarrass or delay the widow and next of kin, to whom the benefit of the recovery is made to pass, by a compliance with the provisions of a complex section, providing for a revi-vor, and the right. of the widow and next of kin thereto, when the personal representative refused, but at once to cut the knot, and declare the action shall proceed *278 without revivor. The suit is obviously continued after the death of the plaintiff, for the use of the widow and next of kin. The personal representative has no real interest in it, and were it revived in his name, it would, in no degree, change the right of the widow and next of kin to the benefits of the recovery. In close analogy to a suit pronounced in the name of a nominal party, for the use of the real party, the statute declares, this class of cases shall proceed without the necessity of revivor — that is, in the name of the decedent, as a mere nominal party, a naked name of record — for the use of the widow and next of kin, who are the real parties to the action.
It is admitted, such a course of practice is somewhat anomalous, but it is not, in our practice, altogether without a precedent. The Code provides, sec. 2858; “When a suit is commenced in the name of one person, for the use of another, and the nominal plaintiff dies, 'the suit may be prosecuted without revivor, as if the death had not happened.” So, in cases of attachments, the death of the defendant proceeded against, without personal service, whether the death occurred before or after the commencement of the action, does not render the proceedings void; but the heirs or representatives as the case may be, have the right within three years from the rendition of final judgment or decree, to make themselves parties by petition, showing merits, verified by affidavit, and contest the plaintiff’s demand: Code, sec. 8533. See also, sec. 3455.
Other instances might be given, both under our prac *279 tice and at common law, somewhat analogous to the one under consideration; but we deem it altogether unnecessary to encumber this opinion with them. It is sufficient to say, we are of opinion that the Circuit Judge committed no error in refusing the defendant’s motion to abate the action, and in allowing it to proceed to final judgment in the name of the original plaintiff.
In this view of the provisions of the Code before recited, there is no error in rendering the judgment for costs against the defendant, on his application for a- continuance.
It is proper, however, to remark, that a question of costs, although not presented in this record, might arise, which, under the peculiar provisions of the Code, would present some embarrassment. In the event of the failure of the plaintiffs to prosecute the suit with effect, against whom would the costs be adjudged? Without, at present, attempting to determine that question, we will remark, that it is apprehended, if the defendant desires to have isome person of record to answer for costs, it is his duty to move for a rule upon the attorney for the prosecution, to show by what authority he continues to prosecute the suit after the death of the original plaintiff; and it is supposed that the production of the authority would make the persons bound thereby, answerable for costs. If, however, the defendant fails to call for the authority, it is his own fault, and it is apprehended, the judgment would be conclusive upon him.
2d, In the process of the trial, the Circuit Judge, *280 upon motion of the plaintiff’s attorney, excluded the statements of tbe witnesses, Bennett and Johnson, who proved that, on the day of the killing, and the day previous, they heard [the deceased making threats of violence against the defendant, Chambers. These threats were excluded on the ground that they were not communicated to the defendant before the shooting; and the action of the Court in this respect, is also assigned as error. It is clear, that no words of provocation will justify an assault; nor will former threats or insults paliate an assault and battery; or ordinarily, in a civil action, be received in mitigation of damages, unless they are so recent as to constitute a part of the res gestee: 2 Greenleaf’s Ev., 267; Lee vs. Woolsey, 19 John. R., 318; 1 Hilliard on Torts, 206, note A; 1 Phillips on Ev., 748, marg. note, 197.
But it is insisted the evidence of the antecedent threats of the deceased, were admissible under the defendant’s plea of justification, as tending to show the animus of the deceased, and thereby superinduce the belief in the defendant that he was in danger of life, or great bodily harm, and therefore justified in taking the life of the plaintiff. We are unable fully to concur •in this proposition. The rule of law which will excuse a homicide, as declared by this Court, in the case of Rippy vs. The State, 2 Head, 217, is as follows: “The law on this subject, is, that to excuse a homicide, the danger of life, or great bodily injury, must either be real, or honestly believed to be so at the time, and upon sufficient ground. It must be apparent and imminent. Previous threats, or even acts of hostility, how violent *281 soever, will not, of themselves, excuse the slayer; but there must be some words or overt acts at the time, clearly indicative of a present purpose to do the injury. Past threats and hostile actions, or antecedent circumstances, can only be looked to in connection with present demonstrations, as grounds of apprehension. To constitute the defense, the belief or apprehension of danger must be founded on sufficient circumstances to authorize the opinion that the deadly purpose then exists, and the fear that it will, at that time, be executed.”
The question in this class of cases, is always one of reasonable apprehension; and to justify or excuse a homicide upon such ground, a case must not only be made out to authorize the fear of death or great bodily harm; but such fear must be really entertained, and the act done under an honest and well-founded belief that it is absolutely necessary to kill at this moment, to save himself from a like injury: Morris vs. Platt, Amer. Law Register, new series, 523. The character of the deceased for violence, as well as his animosity to the defendant, as indicated by words and actions at the time, and before that time, are all proper matters for the jury, in the determination of a question of reasonable apprehension. But how antecedent threats, not so recent as to constitute a part of the res gestee, which were unknown to the defendant at the time of committing the act, can, in the slightest degree, contribute to the formation of a well-grounded belief in the defendant, that he was in danger of life or limb, is more than we can comprehend. If the question was a question of malice, the rule, under some circumstances, might be otherwise, and antecedent threats be ad *282 missible on the question of damages, or to establish the identity of the person committing the act: 2 Hilliard on Torts, 78, note A. But such is not the question in the present case, or the grounds upon which the evidence is offered. It is in justification of the act, or tending to establish such justification; and we know of no reason or authority under the facts of this case, by which the evidence was admissible, unless communicated to the plaintiff: 1 Hilliard on Torts, 206, note A.
3d, The charge of the Court is also excepted to; and it is argued that the Circuit Judge erred in refusing to instruct the jury as requested, “that if the plaintiff sought the difficulty, and brought it on himself, he could not recover in this action.” As a general proposition, this may be true; but it certainly does not always hold good in actions of the character of the one now under consideration. Cases may occur, where the plaintiff brings on the difficulty, and the defendant in the first instance, acted lawfully, but afterwards by an unnecessary degree of violence, became a trespasser ah initio. In cases of assault and battery, both parties may be guilty of a breach of the peace, and liable to indictment; but a civil action cannot be brought by each against the other. The plaintiff may have been the aggressor; yet, if the defendant had used not only more force than was necessary for his self-defense, but had unnecessarily abused the plaintiff, he cannot, in a civil action, recover damages, but must pay damages: 1 Chitty’s Plead., 167, marginal note, 2. So it follows, in this view of the law, which is altogether a familiar principle, the Court committed no error in declining to charge the broad proposition stated.
*283 4th, Exception is also taken to the action of the Court in striking out the defendant’s first and second pleas to the declaration. We do not think, in the present aspect of the record, that the error in this respect assigned, is matter of substance, as the defendant, under the plea of not guilty, and the special plea that the shooting was done in his necessary self-defense, had substantially all the benefits claimed under the pleas stricken out, which, to say the least of them,' were informal and highly inartificial. The plaintiff, as the pleadings stood in the record, was put to the necessity of proving every material allegation in his declaration, and the defendant, under his pleas, was enabled to make a full and complete defense to the action.
5th, Other exceptions were taken to the general charge, which, upon a careful examination, we are unable to sustain. It is, perhaps, in some respects, subject to criticism; hut, upon the whole, a reasonable and fair exposition of the law governing the case.
On the subject of the rule governing the jury in the estimation of damages, under our Act of Assembly, the defendant certainly has no ground of complaint; and as the jury has passed upon that subject, certainly without injury to the defendant, we do not feel called upon to express any opinion as to the rule, under our statute, in a case like the present, by which the damages ought to he estimated. There is some conflict of authority on this subject, growing chiefly out of the peculiar phraseology of the different statutes in different States.
Judgment affirmed.