**IN THE SUPREME COURT OF TENNESSEE**
**AT NASHVILLE**
**(HEARD AT SHELBYVILLE)**

**FILED**

**FOR PUBLICATION**
**January 25, 1999**
**Filed:** January 25, 1999

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| MARTHA P. JORDAN, Administratrix of the Estate of Mary Sue Douglas, Deceased, | ) ) ) ) | |
| PLAINTIFF/APPELLANT, | ) ) | HUMPHREYS CIRCUIT |
| v. | ) ) | Hon. Robert E. Burch |
| BAPTIST THREE RIVERS HOSPITAL, MARK W. ANDERSON, M.D., NOEL DOMINGUEZ, M.D., AND PATRICK J. MURPHY, M.D., | ) ) ) ) ) | No. 01S01-9706-CV-00142 |
| DEFENDANTS/APPELLEES. | ) | |

FOR PLAINTIFF/APPELLANT:

DAVID RANDOLPH SMITH
ROBERT BLAKE MENZEL
Nashville

FOR DEFENDANT/APPELLEE,
BAPTIST THREE RIVERS HOSPITAL:

GAYLE MALONE, JR.
KATHRYN J. LADD
KARA E. SHEA
Nashville

FOR DEFENDANT/APPELLEE,
MARK W. ANDERSON, M.D.:

DAN L. NOLAN
SUZANNE M. PEARSON
Clarksville

FOR DEFENDANT/APPELLEE,
NOEL DOMINGUEZ, M.D.:

THOMAS F. RAINEY
Jackson

FOR DEFENDANT/APPELLEE,
PATRICK J. MURPHY, M.D.:

ROBERT E. HOEN
JOHN R. CALLCOTT
Nashville

FOR AMICUS CURIAE,
STEFFONE McCLENDON:

H. NAILL FALLS JR.
JAMES B. JOHNSON
Nashville

FOR AMICUS CURIAE,
TENNESSEE TRIAL LAWYERS
ASSOCIATION:

JOHN A. DAY
DONALD CAPPARELLA
Nashville

STEVEN W. TERRY
Morristown

# O P I N I O N

TRIAL COURT REVERSED                    HOLDER, J.

## OPINION

We granted this appeal to determine whether spousal and parental consortium losses should be permissible in wrongful death actions. Tennessee law previously permitted the anomalous result of allowing spousal consortium losses in personal injury cases but not in cases of wrongful death. Upon review of the modern trend of authority and careful scrutiny of our statutory scheme, we hold that loss of consortium claims should not be limited to personal injury suits. We hold that the pecuniary value of a deceased's life includes the element of damages commonly referred to as loss of consortium.

## BACKGROUND

This cause of action arises out of the death of Mary Sue Douglas ("decedent"). The plaintiff, Martha P. Jordan, is a surviving child of the decedent and the administratrix of the decedent's estate. The plaintiff, on behalf of the decedent's estate, filed a medical malpractice action against the defendants, Baptist Three Rivers Hospital, Mark W. Anderson, M.D., Noel Dominguez, M.D., and Patrick Murphy, M.D. The plaintiff has alleged that the defendants' negligence caused the decedent's death.

The plaintiff's complaint sought damages for loss of consortium and for the decedent's loss of enjoyment of life or hedonic damages. The defendants filed a motion to strike and a motion for judgment on the pleadings asserting that Tennessee law does not permit recovery for loss of parental consortium and for hedonic damages.

The trial court granted the defendants' motion to strike and granted the plaintiff permission to file an interlocutory appeal. The Court of Appeals found

that the plaintiff's application for appellate review was untimely. Nevertheless, the appellate court "reviewed the plaintiff's application and the responses of the defendants and [found] that this [was] not an appropriate case for an interlocutory appeal." The plaintiff's application for an interlocutory appeal was denied. We granted appeal[1] to determine whether claims for loss of spousal and parental consortium in wrongful death cases are viable in Tennessee under Tenn. Code Ann.§ 20-5-113.[2] We express no opinion as to whether the loss of parental consortium may be recovered in personal injury actions in which the parent or parents survive. That issue will be addressed in an appropriate case.

## ANALYSIS

### Development of Wrongful Death Statute

A wrongful death cause of action did not exist at common law. See Annotation, Modern Status of Rule Denying a Common-Law Recovery for Wrongful Death, 61 A.L.R. 3d 906 (1975). Pursuant to the common law, actions for personal injuries that resulted in death terminated at the victim's death because "in a civil court the death of a human being could not be complained of as an injury." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 127, at 945 (5th ed. 1984) ("Prosser"). "The [legal] result was that it was cheaper for the defendant to kill the plaintiff than to injure him, and that the most grievous of all injuries left the bereaved family of the victim . . . without a remedy." Id. This rule of non-liability for wrongful death was previously the prevailing view in both England and in the United States. East Tennessee V. &

---

[1]Oral argument was heard in this case on April 2, 1998, in Shelbyville, Bedford County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

[2]This Court has previously held that claims for hedonic damages are not viable in Tennessee in wrongful death cases. See Spencer v. A-1 Crane Serv., Inc., 880 S.W.2d 938, 943 (Tenn. 1994).

3

G. Ry. Co. v. Lilly, 18 S.W. 243, 244 (Tenn 1891); Hall v. Nashville & C. R. Co., 1 Shan. 141 (Tenn. 1859).

In 1846, the British Parliament enacted a wrongful death statute designed to abrogate the common law rule's harsh effect of denying recovery for personal injuries resulting in death. The English statute was referred to as "Lord Campbell's Act" and created a cause of action for designated survivors that accrued upon the tort victim's death. See Malone, The Genesis of Wrongful Death, 17 Stan. L. Rev. 1043, 1051 (1965); Prosser, § 127, at 945.

Jurisdictions in the United States were quick to follow England's lead. Id. In 1847, New York became the first American jurisdiction to enact a wrongful death statute. Speiser, Recovery for Wrongful Death and Injury, § 1:9 (3d ed. 1992). Presently, every jurisdiction in the United States has a wrongful death statute. Id.; see also Prosser, § 127, at 945. These statutes, including that of Tennessee, embody the substantive provisions of Lord Campbell's Act and permit designated beneficiaries to recover losses sustained as a result of the tort victim's death. Dixie Ohio Exp. Co. v. Butler, 166 S.W.2d 614, 615 (Tenn. 1942); East Tennessee, 18 S.W. at 244.

Tennessee was one of the earliest states to abrogate judicially "[t]he artificial rule of the common law that every right of action for personal injury died with the person injured." East Tennessee, 18 S.W. at 244. As early as 1836, the Tennessee legislature enacted a statute providing for the survival of all civil actions for which suit had been commenced prior to the victim's death.[3] In 1850, our legislature made its initial attempt to permit recovery in wrongful death cases. The legislation permitted a recovery for wrongful death by enacting legislation

---

[3]"[W]hen any person may depart this life, by or against whom . . . any civil action, whether the same be founded on wrongs or contracts, except actions for wrongs affecting the person or character of the plaintiff, may have commenced, it shall be lawful to renew such suit by or against the personal representative of such decedent . . ." 1836 Tenn. Pub. Acts, ch. 77.

that permitted a personal representative to bring an action on behalf of a widow or next of kin for the wrongful death of the victim regardless of whether suit had been commenced prior to the death.[4] This statute underwent revisions in 1851[5] and 1877[6] which moved the law closer to its present form. Thus, prior to 1850, Tennessee adhered to the common law rule that, upon the death of the victim, no cause of action for damages could be brought by the estate of the deceased for the benefit of third parties, such as family members, who sustained losses as a result of the death. See Daniel v. East Tenn. Coal Co., 58 S.W. 859, 860 (Tenn. 1900); Chambers v. Porter, 45 Tenn. 273, 276 (1868).

After more than a century of piecemeal revision by the legislature and interpretation by the courts, Tennessee's modern wrongful death law has taken shape. See generally, T. A. Smedley, Wrongful Death Actions in Tennessee, 27 Tenn. L. Rev. 447 (1960). Our present wrongful death statutes are substantially similar to the early codifications abandoning the rule of non-liability for wrongful death.

Specifically, Tenn. Code Ann. § 20-5-102, the direct descendent of the 1836 statute, provides that

> [n]o civil action commenced, whether founded on wrongs or contracts, except actions for wrongs affecting the character of the plaintiff, shall abate by the death of either party . . . ; nor shall any

---

[4]"[I]n all and every case where any person shall come to his death, by injuries received from another . . . for which injuries, in case death had not resulted, an action of damages would lie at law, the personal representative of the person thus killed shall have the right to institute an action for damages . . ." 1850 Tenn. Pub. Acts, ch. 58.

[5]"[W]hen the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action against the latter, if the former might have maintained an action had he lived, against the latter for an injury caused by the same act or omission . . ." 1851 Tenn. Pub. Acts, ch. 17.

[6]"[T]he right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and in case there is no widow, to his children, or to his personal representative, for the benefit of his widow or next of kin . . ." 1877 Tenn. Pub. Acts, ch. 78.

right of action arising hereafter based on the wrongful act or omission of another, except actions for wrongs affecting the character, be abated by the death of the party wronged; but the right of action shall pass in like manner as [described in Tenn. Code Ann. § 20-5-106].

Moreover, Tenn Code Ann. § 20-5-106, the modern version of the 1877 statute, provides in part:

The right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not been ensued, shall not abate or be extinguished by the person's death but shall pass to the person's surviving spouse and, in case there is no surviving spouse, to the person's children or next of kin; or to the person's personal representative, for the benefit of the person's surviving spouse or next of kin.

Tenn. Code Ann. § 20-5-106(a). Thus, an examination of the development of Tennessee's wrongful death law, from its inception to the present, establishes that the right of recovery in a wrongful death case is strictly a creation of statute. See Hogan v. McDaniel, 319 S.W.2d 221, 222-23 (Tenn. 1958); Jamison v. Memphis Transit Management Co., 381 F.2d 670, 673 (6th Cir. 1967).

Because a cause of action for wrongful death is a creation of statute, recoverable damages must be determined by reference to the particular statute involved. Although all states have abolished the rule of non-liability when personal injury results in death, the statutory methods of doing so fall into two distinct categories - wrongful death statutes and survival statutes. See Sea-Land Serv., Inc. v. Gaudet, 414 U.S. 573, 575 n.2 (1974).

The majority of states have enacted "survival statutes." These statutes permit the victim's cause of action to survive the death, so that the victim, through the victim's estate, recovers damages that would have been recovered

6

by the victim had the victim survived.  Sea-Land, 414 U.S. at 575 n.2; Recovery for Wrongful Death at § 1:15; Prosser, § 126, at 942-43.  Survival statutes do not create a new cause of action; rather, the cause of action vested in the victim at the time of death is transferred to the person designated in the statutory scheme to pursue it, and the action is enlarged to include damages for the death itself.  Prosser, § 126, at 942-43.  "[T]he recovery is the same one the decedent would have been entitled to at death, and thus included such items as wages lost after injury and before death, medical expenses incurred, and pain and suffering," and other appropriate compensatory damages suffered by the victim from the time of injury to the time of death.  Id. at 943.

In contrast to survival statutes, "pure wrongful death statutes" create a new cause of action in favor of the survivors of the victim for their loss occasioned by the death.  Recovery for Wrongful Death at § 1:13; William T. Gamble, Actions for Wrongful Death in Tennessee, 4 Vand. L. Rev. 289, 290 (1950).  These statutes proceed "on the theory of compensating the individual beneficiaries for the loss of the economic benefit which they might reasonably have expected to receive from the decedent in the form of support, services or contributions during the remainder of [the decedent's] lifetime if [the decedent] had not been killed."  Prosser, § 127, at 949.  Hence, most wrongful death jurisdictions have adopted a "pecuniary loss" standard of recovery, allowing damages for economic contributions the deceased would have made to the survivors had death not occurred and for the economic value of the services the deceased would have rendered to the survivors but for the death.  Recovery for Wrongful Death at § 3:1.

Tennessee's approach to providing a remedy for death resulting from personal injury is a hybrid between survival and wrongful death statutes, resulting in a statutory scheme with a "split personality."  27 Tenn. L. Rev. at

454. The pertinent damages statute, Tenn. Code Ann. § 20-5-113, has been in existence in one form or another since 1883.[7] It provides:

> Where a person's death is caused by the wrongful act, fault, or omission of another, and suit is brought for damages . . . the party suing shall, if entitled to damages, have the right to recover the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, **and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received**.

Tenn. Code Ann. § 20-5-113 (emphasis added).

The plain language of Tenn. Code Ann. § 20-5-113 reveals that it may be classified as a survival statute because it preserves whatever cause of action was vested in the victim at the time of death. Jones v. Black, 539 S.W.2d 123 (Tenn. 1976); Milligan v. American Hoist & Derrick Co., 622 F. Supp. 56, 59 (W.D. Tenn. 1985). The survival character of the statute is evidenced by the language "the party suing shall have the right to recover [damages] resulting **to the deceased from the personal injuries**." Thrailkill v. Patterson, 879 S.W.2d 836, 841 (Tenn. 1994) (emphasis added). Tennessee courts have declared that the purpose of this language is to provide "for the continued existence and passing of the right of action of the deceased, and not for any new, independent cause of action in [survivors]." Whaley v. Catlett, 53 S.W. 131, 133 (Tenn. 1899); see also Herrell v. Haney, 341 S.W.2d 574, 576 (Tenn. 1960); Memphis St. Ry. Co. v. Cooper, 313 S.W.2d 444, 447-48 (Tenn. 1958); Jamison v. Memphis Transit Management Co., 381 F.2d 670, 673 (6th Cir. 1967). Accordingly, Tenn. Code Ann. § 20-5-113 "in theory, preserve[s] the right of action which the deceased himself would have had, and . . . [has] basically been construed as falling within the survival type of wrongful death statutes for over a

---

[7]See 1883 Tenn. Pub. Acts, ch. 186.

8

century" because it continues that cause of action by permitting recovery of damages for the death itself.  <u>Jones</u>, 539 S.W.2d at 123-25.

Notwithstanding the accurate, technical characterization of Tenn. Code Ann. § 20-5-113 as survival legislation, the statute also creates a cause of action that compensates survivors for their losses.  The statute provides that damages may be recovered "**resulting to the parties for whose use and benefit the right of action survives from the death**."  <u>Id.</u> (emphasis added).  Hence, survivors of the deceased may recover damages for <u>their</u> losses suffered as a result of the death as well as damages sustained by the deceased from the time of injury to the time of death.  <u>Jones</u>, 539 S.W.2d at 124 (Tennessee's wrongful death legislation provides "for elements of damages consistent with a theory of survival of the right of action of the deceased but also allows damages consistent . . . with the creation of a new cause of action in the beneficiaries.").  Our inquiry shall focus on whether survivors should be permitted to recover consortium losses.

**LOSS OF SPOUSAL CONSORTIUM**

In 1903, this Court held in <u>Davidson Benedict Co. v. Severson</u>, 72 S.W. 967 (Tenn. 1903), that consortium damages were not available under Tennessee's wrongful death statute.  The plaintiff urges this Court to revisit and reverse the holding in <u>Davidson</u> based on the following assertions:  (1)  that the <u>Davidson</u> holding was contrary to the plain language of the wrongful death statute;  (2)  that permitting consortium damages in personal injury but not in wrongful death cases is illogical;  (3)  that the majority of jurisdictions now permit loss of consortium damages in wrongful death cases; and  (4)  that the doctrine of stare decisis should not commit this Court "to the sanctification of ancient fallacy."  Upon careful review, we agree with the plaintiff.

9

## STARE DECISIS AND STATUTORY CONSTRUCTION

The defendant urges this Court to decline revisiting the issue of the availability of consortium damages under Tenn. Code Ann. § 20-5-113 on the basis of stare decisis. "Were we to rule upon precedent alone, were stability the only reason for our being, we would have no trouble with this case. . . . In so doing we would have vast support from the dusty books. But dust [from] the decision would remain in our mouths through the years ahead, a reproach to law and conscience alike. Our oath is to do justice, not to perpetuate error." Montgomery v. Stephan, 101 N.W.2d 227, 229 (Mich. 1960).

The defendant asserts that any "change to the meaning of Tenn. Code Ann. § 20-5-113 should be left to the legislature." The issue before us, however, involves a matter of statutory interpretation and not the implementation of public policy.

Next, the defendant argues that the wrongful death statute is in derogation of the common law and, therefore, should be strictly construed. The defendant maintains that interpreting the wrongful death statute to permit recovery of "parental consortium claims . . . would be to afford the statute a liberal construction."

Issues of statutory construction are questions of law and shall be reviewed de novo without a presumption of correctness. Beare Co. v. Tennessee Dep't of Revenue, 858 S.W.2d 906, 907 (Tenn. 1993); Union Carbide Corp. v. Huddleston, 854 S.W.2d 87, 91 (Tenn. 1993). Statutes in derogation of the common law are generally strictly construed. The rule requiring strict construction amounts to a recognition of a presumption against the legislature's intention to change existing law. Stem. v Nashville Interurban Ry.,

221 S.W. 192, 195 (Tenn. 1920). Remedial statutes, however, generally reflect a legislative intent to amend an area of the common law and shall be construed liberally. Id.

This Court's role in statutory interpretation is to ascertain and to effectuate the legislature's intent. State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993). Generally, legislative intent shall be derived from the plain and ordinary meaning of the statutory language when a statute's language is unambiguous. Carson Creek Vacation Resorts, Inc. v. Department of Revenue, 865 S.W.2d 1, 2 (Tenn. 1993). When a statute's language is ambiguous and the parties legitimately derive different interpretations, we must look to the entire statutory scheme to ascertain the legislative intent. Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995).

The defendant argues that this Court has previously held that Tenn. Code Ann. § 20-5-113 is a survival statute and that survival statutes generally do not permit recovery under consortium theories. While this Court in Jones v. Black, 539 S.W.2d 123 (Tenn. 1976), previously classified Tennessee's wrongful death statute as a survival statute for purposes of limitations of action, we are not confined to interpret the statute according to the strictures of a judicially imposed classification when such an interpretation would ignore unambiguous statutory language. Accordingly, our analysis of Tenn. Code Ann. § 20-5-113 shall focus on the statute's language and not on what damages "survival" statutes in other states generally permit. It must be remembered that, notwithstanding the accurate, technical characterization of Tenn. Code Ann. § 20-5-113 as survival legislation, the statute also provides for a cause of action that compensates survivors for *their* losses.

11

Damages under our wrongful death statute can be delineated into two distinct classifications. Thrailkill v. Patterson, 879 S.W.2d 836 (Tenn. 1994); Davidson Benedict Co. v. Severson, 72 S.W.2d 967 (Tenn. 1903). The first classification permits recovery for injuries sustained by the deceased from the time of injury to the time of death. Damages under the first classification include medical expenses, physical and mental pain and suffering, funeral expenses, lost wages, and loss of earning capacity. See Tenn. Code Ann. § 20-5-113 ("right to recover the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries").

The second classification of damages permits recovery of incidental damages suffered by the decedent's next of kin. See Tenn. Code Ann. § 20-5-113 ("*and* also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received.") (emphasis added); see also Thrailkill, 879 S.W.2d at 841; Davidson Benedict Co., 72 S.W. at 977.[8] Incidental damages have been judicially defined to *include* the pecuniary value of the decedent's life. Spencer v. A-1 Crane Serv., Inc., 880 S.W.2d 938, 943 (Tenn. 1994). Pecuniary value has been judicially defined to include "the expectancy of life, the age, condition of health and strength, capacity for labor and earning money through skill, any art, trade, profession and occupation or business, and personal habits as to sobriety and industry." Id. Pecuniary value also takes into account the decedent's probable living expenses had the decedent lived. Wallace v. Couch, 642 S.W.2d 141 (Tenn. 1982); Hutton v. City of Savannah, 968 S.W.2d 808, 811-12 (Tenn. Ct. App. 1997).

---

[8]"It is thus apparent from the authorities that there are ... two classes of damages recoverable in the same action. First, damages purely for the injury to the deceased himself; second, the incidental damages suffered by the widow and children, or next of kin, from his death." Davidson Benedict Co., 72 S.W. at 977.

12

The wrongful death statute neither explicitly precludes consortium damages nor reflects an intention to preclude consortium damages. The statute's language does not limit recovery to purely economic losses. To the contrary, the statute's plain language appears to encompass consortium damages.

Indeed, this Court has recognized that pecuniary value cannot be defined to a mathematical certainty as such a definition "would overlook the value of the [spouse's] personal interest in the affairs of the home and the economy incident to [the spouse's] services." Thrailkill, 879 S.W.2d at 841. We further believe that the pecuniary value of a human life is a compound of many elements. An individual family member has value to others as part of a functioning social and economic unit. This value necessarily includes the value of mutual society and protection, i.e, human companionship. Human companionship has a definite, substantial and ascertainable pecuniary value, and its loss forms a part of the value of the life we seek to ascertain. While uncertainties may arise in proof when defining the value of human companionship, the one committing the wrongful act causing the death of a human being should not be permitted to seek protection behind the uncertainties inherent in the very situation his wrongful act has created. Moreover, it seems illogical and absurd to believe that the legislature would intend the anomaly of permitting recovery of consortium losses when a spouse is injured and survives but not when the very same act causes a spouse's death.

We are constrained to interpret statutes so that no part or phrase of a statute will be rendered inoperative, superfluous, void, or insignificant. Tidwell v. Collins, 522 S.W.2d 674, 676 (Tenn. 1975). Accordingly, we reverse Davidson Benedict v. Severson, 72 S.W.2d 967 (Tenn. 1902), to the extent that Davidson

Benedict prohibits consideration of spousal consortium losses when calculating the pecuniary value of a deceased's life under the wrongful death statute.[9]

## LOSS OF PARENTAL CONSORTIUM

The wrongful death statute precludes neither a minor child nor an adult child from seeking compensation for the child's consortium losses. Moreover, Tenn. Code Ann. § 20-5-110 provides that "a suit for the wrongful killing of the spouse may be brought in the name of the surviving spouse for the benefit of the surviving spouse and the children of the deceased." This provision when read in pari materia with Tenn. Code Ann. § 20-5-113 seemingly permits consideration of parental consortium damages. See Foster v. Jeffers, 813 S.W.2d 449, 451 (Tenn. Ct. App. 1991) (holding all wrongful death statutes must be construed with reference to one another).

A review of case law in other jurisdictions indicates a trend to expand consortium claims to include the impairment of a child's relationship with a parent. Comment, Belcher v. Goins: West Virginia Joins the Distinct Minority of Jurisdiction in Recognizing a Claim for Loss of Parental Consortium, 94 W. Va. L. Rev. 261, 262 (1991). In cases involving a parent's death, "[t]he general rule . . . followed is that a child's loss of nurture, education and moral training which it probably would have received from a parent wrongfully killed is a pecuniary loss to be considered as an element of the damages suffered by the child." Recovery for Wrongful Death at § 3:47 (listing thirty-four jurisdictions so holding). See also 94 Va. L. Rev. at 266 ("Most states . . . allow a surviving . . . child . . . to recover for loss of consortium where a parent is tortiously killed."); Prosser, § 127, at 952 ("Even jurisdictions that have rejected the loss of society or consortium claim, as

---

[9]All cases precluding recovery of spousal consortium losses in wrongful death cases are overruled to the extent they are inconsistent with this opinion.

such, have permitted one form of it, namely a loss of guidance and advice that the decedent would have provided [to the child].").

A basis for placing an economic value on parental consortium is that the education and training which a child may reasonably expect to receive from a parent are of actual and commercial value to the child. Accordingly, a child sustains a pecuniary injury for the loss of parental education and training when a defendant tortiously causes the death of the child's parent. Moreover, we recognize that:

> "normal home life for a child consists of complex incidences in which the sums constitute a nurturing environment. When the vitally important parent-child relationship is impaired and the child loses the love, guidance and close companionship of a parent, the child is deprived of something that is indeed valuable and precious. No one could seriously contend otherwise.

Still by Erlandson v. Baptist Hosp., 755 S.W.2d 807, 812 (Tenn. App. 1988) (quoting Hoffman v. Dautel, 368 P.2d 57, 59 (Kan. 1962)).

The additional considerations employed for spousal consortium may be applicable to parental consortium claims. We agree with the observation of one court that "companionship, comfort, society, guidance, solace, and protection . . . go into the vase of family happiness [and] are the things for which a wrongdoer must pay when he shatters the vase." Spangler v. Helm's New York-Pittsburgh Motor Exp., 153 A.2d 490 (Penn. 1959).

Adult children may be too attenuated from their parents in some cases to proffer sufficient evidence of consortium losses. Similarly, if the deceased did not have a close relationship with any of the statutory beneficiaries, the statutory beneficiaries will not likely sustain compensable consortium losses or their consortium losses will be nominal. The age of the child does not, in and of itself,

15

preclude consideration of parental consortium damages. The adult child inquiry shall take into consideration factors such as closeness of the relationship and dependence (i.e., of a handicapped adult child, assistance with day care, etc.).

## CONCLUSION

We hold that consortium-type damages may be considered when calculating the pecuniary value of a deceased's life. This holding does not create a new cause of action but merely refines the term "pecuniary value." Consortium losses are not to limited to spousal claims but also necessarily encompass a child's loss, whether minor or adult. Loss of consortium consists of several elements, encompassing not only tangible services provided by a family member, but also intangible benefits each family member receives from the continued existence of other family members. Such benefits include attention, guidance, care, protection, training, companionship, cooperation, affection, love, and in the case of a spouse, sexual relations. Our holding conforms with the plain language of the wrongful death statutes, the trend of modern authority, and the social and economic reality of modern society.

The decision of the of the trial court granting the defendants' motion to strike is reversed. Costs of this appeal shall be taxed to the defendants for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

**Concurring:**

Anderson, C.J.
Drowota, and Birch, J.J.
Russell, Sp.J.