IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 6, 2000 Session

# TAMMY L.M. KLINE, for herself and for the benefit of LORI MICHELLE KLINE, KRISTY LAINE KLINE, and DIANA MARIE KLINE v. DANIEL P. EYRICH, et al.

**Appeal from the Circuit Court for Knox County**
**Nos. 3-284-99 and 1-320-99     Wheeler R. Rosenbalm, Judge**

**FILED FEBRUARY 15, 2001**

**No. E2000-01890-COA-R3-CV**

CHARLES D. SUSANO, JR., J., dissenting.

The majority concludes "there is insufficient evidence to support the [t]rial [c]ourt's rulings." I disagree. I believe the evidence and controlling law fully support the trial court's judgment. I would affirm that judgment *in toto*.

I start by observing what is clear beyond any doubt and what I believe is central to the resolution of this dispute: Tammy L. M. Kline, as the widow of Richard Kline, had the right -- to the exclusion of Richard Kline's three minor children -- to file, control, pursue, and, if appropriate, settle, the claim for damages arising out of Mr. Kline's wrongful death. *See Chapman v. King*, 572 S.W.2d 925, 927 (Tenn. 1978). In *Foster v. Jeffers*, 813 S.W.2d 449 (Tenn. Ct. App. 1991), we addressed the widow's superior right as follows:

> The wrongful death statutes taken together set forth the priorities among those persons entitled by T.C.A. § 20-5-107 to bring a wrongful death action. The party who has the prior and superior right above all others to bring a wrongful death action is the surviving spouse. T.C.A. §§ 20-5-106(a), 20-5-110. See *Cline v. Richards*, 455 F. Supp. 42 (E.D. Tenn. 1977). If there is no surviving spouse, the children of the deceased have priority to bring the action as the next of kin. T.C.A. §§ 20-5-106–107; *Busby v. Massey*, 686 S.W.2d 60 (Tenn. 1984). If no children of the deceased are surviving then priority passes to the next of kin. T.C.A. §§ 20-5-106–107.

*Id*. at 451. *See also **Estate of Baker ex rel. Baker v. Maples***, 995 S.W.2d 114, 115 (Tenn. Ct. App. 1999) (perm. app. denied July 12, 1999) ("A surviving spouse maintains control over the right of action until he or she waives that right.").

In ***Swanson v. Peterson***, C/A No. M1999-00241-COA-R3-CV, 2000 WL 48502 (Tenn. Ct. App. M.S., filed January 21, 2000), the trial court dismissed the earlier-filed wrongful death suit of the deceased's daughter, thereby allowing the widow's later-filed suit to proceed. In so doing, the trial court found that the widow "had 'priority' to pursue the wrongful death claim and that she had not waived her right to do so." *Id*. at *1. We affirmed, and, in the process, made a number of observations, some of which are particularly pertinent to the facts of the instant case:

> Ms. Swanson [the deceased's daughter] is correct that the wrongful death statutory scheme allows a child of the deceased to sue for a parent's wrongful death. As she points out, a suit for a person's wrongful death does not lie solely with the surviving spouse. That, however, does not answer the question this appeal presents. We must decide whether where two separate suits have been instituted to address a single wrongful death–one by a surviving child and one by the surviving spouse–the trial court may dismiss one of the suits in favor of the other.
>
> No matter how many suits parties may file to address an allegedly wrongful death, [T.C.A.] §§ 20-5-106, -07 (1994 and Supp. 1999) contemplate only one cause of action. Accordingly, multiple actions for a single wrongful death cannot be maintained.
>
> Ms. Swanson, as Mr. Hatcher's child, permissibly filed a wrongful death lawsuit. However, two lawsuits ongoing simultaneously to enforce a single cause of action is not permissible. Where wrongful death actions conflict and overlap, the surviving spouse has the prior and superior right to bring and maintain the wrongful death litigation. In terms of priority, the spouse's action trumps the others.
>
> A lawsuit may originally present a pursuable cause of action when filed, yet if before adjudication it loses that character, it is the court's duty to dismiss it. The decision to dismiss an action, where the movant demonstrates grounds for dismissal, lies within the trial court's discretion. Ms. Swanson's properly filed wrongful death suit became duplicative once Ms. Hatcher filed suit. Given that Ms. Hatcher's action, by law, had priority, the trial court did not abuse its discretion in granting the defendants' motion to dismiss Ms. Swanson's suit.

*Id*. at *2 (footnotes and citations omitted).

In the instant case, the trial court consolidated the children's suit with that of the widow's. Later, the trial court decreed, in the words of the majority opinion, "that the suit would be styled with the widow as surviving spouse plaintiff and for the use and benefit of the minor children."[1] The majority opines that "[t]he children were in effect permitted to intervene in the widow's action, apparently on the basis that intervention was appropriate to protect the children's interest." I agree with the majority's characterization of what happened below if, by using the language "to protect the children's interest," the majority means to suggest a presence in the lawsuit for the sole purpose of ensuring that the children receive their statutory share – 2/3rds – of any net settlement or verdict. As we pointed out in a recent case, "there is a critical distinction between the right to bring the action, on the one hand, and the right to share in the proceeds of a settlement or judgment, on the other." *Gilliam ex rel. Gilliam v. Calcott*, C/A Nos. E1999-02365-COA-R3-CV, 03A01-9904-CV-00133, 2000 WL 336503 at *2 (Tenn. Ct. App. E.S., filed March 30, 2000). Since the proceeds of a wrongful death action are distributed as personal property of the decedent, *see id* at *3, intervention by the children of a deceased in a widow's wrongful death action is permissible to make sure that the proceeds are distributed properly; however, intervention for this purpose does not include intervention for the purpose of controlling, or participating in, the widow's lawsuit. We made this clear in the *Swanson* case. In *Swanson*, no attempt was made by either party to consolidate the two pending actions. However, in affirming the trial court's dismissal of the children's action, we made the following comment that is pertinent to the subject now under discussion:

> Even if the trial court had consolidated the two cases, it would have still been required to choose either [the widow] or [the daughter] as the proper party plaintiff to proceed with the case. The dismissal of [the daughter's] complaint accomplished the same result.

*Swanson*, 2000 WL 48502, at *2 n.5. (citation omitted). In the instant case, the trial court correctly realized that the widow had the right to control the litigation. While the trial court probably should have dismissed the children's action, as was done in *Swanson*, its failure to do so and its willingness to allow the children's counsel to play a very limited role in the widow's lawsuit does not lend any support to the children's claim that their counsel should participate in an "off the top" contingent fee out of the total recovery. This litigation -- this one cause of action -- belonged to the widow, and she alone, with the assistance of her counsel, had the right to pursue and control it.

It is important to remember that the children's loss of consortium is but one element of the pecuniary value of the deceased's life. *See Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 600 (Tenn. 1999). Under *Jordan*, the children's loss of consortium "claim" is not a "new cause of action." *Id*. at 601. I believe it follows from this that there can be only one recovery in a wrongful death action, at least where the sole beneficiaries of the recovery are the surviving spouse and the children of the deceased. This being the case, a widow, such as the plaintiff in the instant case, has

---

[1] Such styling is consistent with the mandate of T.C.A. § 20-5-110(a) (1994).

-3-

a sufficient motivation – even if it may be a purely selfish one – to prove the children's loss of consortium because to do so is to increase the "pot" of recovery, singular in nature, out of which she will receive her statutory share. Whether a widow likes or dislikes her stepchildren is immaterial; she can be expected to vigorously pursue their probable assertion that they had a close and meaningful relationship with their father, if for no other reason than to increase her *own* ultimate recovery. Her own relationship with the children is not relevant on the issue of the children's loss of consortium "claim"; rather it is the children's relationship with their father that is important. Thus, while the trial court in the instant case gave its permission for the children's counsel to question them had the case gone to trial, such a grant was unnecessary in view of the widow's clear motivation to prove that the children suffered a loss of consortium when their father died. In permitting counsel to participate in this fashion, the trial court was apparently trying to accommodate, in a very limited way, the desire of the children's counsel to participate in the trial. However, since this case was settled before trial, this inchoate participation never came to fruition. In any event, this very limited potential involvement, which was opposed by the widow's counsel, cannot, in my judgment, be viewed as a factor in support of the children's position in this case. The children did not have a right to "crash the party," *i.e.*, tamper with the widow's right to control the litigation.

As was earlier pointed out in this separate opinion, a surviving spouse has the right to bring suit for the wrongful death of his or her mate, *see* T.C.A. §§ 20-5-107,-110 (1994), **Chapman**, 572 S.W.2d at 927, **Foster**, 813 S.W.2d at 451; to control the litigation, *see id*. at 452; and to enter into a compromise settlement of the claim. *See* T.C.A. § 20-5-110(b) (1994), **Foster**, 813 S.W.2d at 452-53. This bundle of rights logically and necessarily includes the right to, and even the obligation to, investigate the claim, file suit, prepare the case for trial, and, if necessary, try the case to conclusion. Typically, a claimant will need the assistance of counsel in order to fulfill his or her statutory and, in this case, fiduciary duty to faithfully pursue the wrongful death claim. In the instant case, the widow hired counsel who promptly pursued her claim. The complaint filed by her counsel reflects in the body of the complaint that the widow knew she was pursuing the claim, not only for herself, *but also for the benefit of the children of the deceased.* In addition to the meaningful references to the children in the body of the complaint, their interest is also clearly reflected in the prayer in the widow's complaint:

> That she and the decedent's natural children have and recover a Judgment for appropriate compensatory damages in an amount not to exceed Five Million Dollars ($5,000,000.00) for the wrongful death of her decedent, which damages would include all claims for injuries sustained by and endured by Richard E. Kline himself; his medical and funeral expenses; his property damage; loss of consortium and companionship; and for the pecuniary value of the life of Richard E. Kline, deceased.

As the majority suggests, and as the record clearly reflects, the widow's attorney, without equivocation, indicated to his counterpart on the children's side, on a number of occasions, that he

did not need, or want, the help or participation of the children's counsel in the widow's suit. The children argue that this shows the uncooperative nature of the widow and her counsel; I see it as nothing more than their insistence, supported by the law, that the widow had the right to control the litigation.

This case was settled for $1.1 million -- all of the insurance proceeds available to the defense. All agree this was a good settlement under the circumstances. This settlement was effected by the widow acting through her counsel. It is not subject to dispute that the widow had the right to settle the claim, and settle it in a way that binds the children, T.C.A. §20-5-110(b) ("*The surviving spouse* may effect a bona fide compromise in such a [wrongful death] suit or right of action and *may execute a valid release which shall be binding upon all the children of the deceased* or next of kin of the deceased." (emphasis added)).

In the instant case, the children of the deceased filed the first lawsuit. They did so soon after the subject accident -- on the twenty-first day following their father's death. Seventeen days later, the widow filed her complaint, which, as previously indicated, sought a recovery for herself and *on behalf of the children of the deceased's first marriage*. The fact that the children's complaint was first in time does not make their suit superior to that of the widow's. Clearly, her suit has priority.

At the conclusion of the final hearing below, the trial court made several findings of fact and reached certain conclusions of law:

> THE COURT: All right, Thank you all very much. In this controversy about the division of attorney fees there are a number of matters that are not really in serious dispute. It is, of course, not disputed that the decedent left surviving a widow, Tammy Kline, and three children and a former wife. It is not disputed that the parties have in effect entered into a settlement for the wrongful death of the decedent for the sum of one million one hundred thousand dollars and no serious dispute is made by any party about the reasonableness of that settlement. And if it is necessary for the Court to declare so, the Court declares without hesitation that the settlement is fair and reasonable to all parties, including the minor beneficiaries in this case, who are Kristy Liane Kline and Diana Marie Kline, and that the settlement of this lawsuit for the wrongful death of Richard E. Kline is manifestly in the best interest of all of the parties before the Court.
>
> In this case, as the Court has previously said, the decedent's widow, Tammy L. Kline, had a statutory right to pursue the wrongful death action for herself and for all those who were entitled to benefit from recovery for his wrongful death. That right was secured to her by the Tennessee legislature and is found in Tennessee Code Annotated Section 20-5-110, and as a person vested with a statutory right to

pursue the wrongful death action for the death of Richard Kline Mrs. Kline was empowered to employ counsel and to enter into a fee agreement with counsel for the prosecution of that lawsuit.

She entered into a fee arrangement with the law firm of Fox & Farmer and it appears that as the statutory plaintiff to pursue this lawsuit she agreed to pay Fox & Farmer a fee of one-third of any recovery obtained in the case. As the person designated by statute with authority to prosecute the lawsuit she was likewise designated by statute with authority to settle the case. And it appears here that, as previously indicated, the case has been settled for one million one hundred thousand dollars.

Under the law of this state Mrs. Kline, Tammy Kline, was obliged to see to the distribution of any settlement or judgment proceeds according to the law of this jurisdiction, which provides that those proceeds are to be distributed according to the law of intestacy, which means that Mrs. Kline was entitled to one-third of the proceeds and the remaining two-thirds of the proceeds belonged to the children of Richard Kline.

Counsel for the children of Mr. Kline take the position in this case that separate counsel was necessary because of some schism or ill feelings between Tammy Kline and perhaps the children, and more so between Tammy Kline and Mr. Kline's former wife, and the counsel for the Kline children contend that they made a contribution toward the settlement of the case and that the fee should be shared with them. However, there's been no showing to the Court that the settlement would not have been effected on the same terms and conditions that it was effected absent any participation from any counsel save the counsel for Tammy Kline.

And so the Court is constrained to conclude that in this case the settlement proceeds should be paid to Tammy Kline as the statutory plaintiff entitled to receive those proceeds and that she is impressed with the obligation to distribute, after deduction of a one-third attorney fee and expenses, distribute those proceeds, the remaining two-thirds of those proceeds, to the Kline children in the following fashion. Lori Michelle Kline is entitled to receive her portion of those proceeds directly from Tammy Kline and give receipt therefore [sic], because it is undisputed in this case that she presently is an adult. The proceeds payable and due Kristy Liane Kline and Diana Marie Kline shall be paid into the registry of the Court, as they are

-6-

presently minors, subject to further distribution upon the appropriate qualification of a legal guardian for each of these minors.

Under the circumstances shown in this case and the statutory law, which gives Mrs. Kline, Tammy Kline, the right to pursue and settle this cause of action, this Court cannot conclude that any other result is appropriate, and so counsel shall prepare an order accordingly.

\* \* \*

MR. SCOTT: Your Honor, may I ask if you would make a finding concerning our contract with our clients. We would like a finding, your Honor, that factually we did have a contract for one-third with Marcia Newcomb in behalf of the three children. And would your Honor – is your Honor going to make any finding regarding whether or not there was inequality of the work that we did in this case and as consolidated and whether there is inequity or unjust enrichment that would take this case out of the general rule. We would ask your Honor to make a finding in that regard. And, secondly, we would appreciate and request the Court to make a finding as to whether or not we are entitled to fees from our clients who –

THE COURT: I don't think that issue is before me, Mr. Scott.

MR. SCOTT: Very well, your Honor. How about the other issues that are before you?

THE COURT: Apparently the parties do not dispute you had a contract with the mother of these three children providing for the payment of one-third attorney fees, but I don't think the reasonableness of that contract is before me and I will not make a decision about that.

MR. SCOTT: Do you intend to –

THE COURT: Pardon.

MR. SCOTT: Do you intend to make a finding as to the issues of inequality of work in this case and unjust enrichment to take it out of the general rule?

THE COURT: I don't think unjust enrichment is an issue here. What the parties are saying is these children must pay one way or the other.

You say you're entitled to one-third of what they recover. Mr. Farmer says he is entitled to one-third of what they recover. I find that under the statute the widow had the right to pursue the cause of action. She had the right to employ a lawyer. She had an obligation, therefore, to pay that lawyer and to pay -- I find the one-third -- I don't think you take issue with the fact that the one-third contingency of Fox & Farmer is reasonable.

That's the only contract before me. And I've strained and struggled with this case. I don't see that two or three lawyers were necessary in this case. I don't know any other way to put it. I've tried to dance around the thing and put it as nice as I know how. I just don't see the necessity for that.

MR. SCOTT: Because of the statutory –

THE COURT: Mrs. Kline had a right to pursue this cause of action granted to her by the state legislature and there's no showing in my judgment in this case that the result wouldn't have been the same if the children had never had a lawyer. I'm sorry. I can't conclude anything else. What else can I conclude?

The trial court's remarks are consistent with the law. The evidence does not preponderate against its factual findings.

With all due respect to the children's very competent counsel, I do not believe that the children and their counsel had the right to prepare this case for trial with the expectation that their efforts would or could position their counsel to share in the contingent fee due for pursuing this claim. That fee belongs to counsel representing the individual who had the right to pursue and the responsibility for pursuing the claim; in other words, counsel for the widow. In my judgment, the children and their counsel had no right to "force" themselves upon the widow and her counsel in the widow's pursuit of the claim in a way that would dilute the right of her counsel to recover his one-third contingent fee of, and out of, the total recovery.

The children argue that they were fearful that their stepmother would not protect their interest in any settlement or verdict. Even assuming that they were justified in this fear -- a conclusion I cannot reach based upon the record before us -- that fear did not justify their attempt to prepare the widow's claim for trial. If this was their true concern, they could have addressed it by seeking intervention in the proceeding filed by the widow. However, even in this situation, intervention should be limited to an intervention to protect their interest in a settlement or verdict, not intervention to participate in the pursuit of the claim. As stated many times in this opinion, the pursuit of the claim was the exclusive prerogative of the widow.

-8-

The majority cites three unreported decisions of the Court of Appeals as support for its decision in this case. I do not believe that the holdings in these cases are authority for the majority's decision to vacate the judgment below. In *PST Vans, Inc. v. Reed*, C/A Nos. E1999-01963-COA-R3-CV, 03A01-9901-CV-00113, 1999 WL 1273517 (Tenn. Ct. App. E.S., filed December 28, 1999) we affirmed a contingent fee and expenses award to the widow's attorney in a wrongful death case. While we discussed the common fund doctrine, with all its ramifications, in some detail, our basic holding was simply this: without a record of all of the evidence considered by the trial court, we must presume that the trial court's judgment is correct. *Id.* at 6. The holding in *PST Vans, Inc.*, does not support the children's position in the instant case. The other two cases cited by the majority involve disputes between the *parents* of the deceased. Those cases are not authority for the sharing of the fee in this case, involving, as it does, a dispute between a widow who had the superior right to file the action and her stepchildren who did not.

For the reasons indicated, I find no justification in the evidence and/or the law to warrant a remand of this case to address a sharing of the fee. Under the law, that fee belongs exclusively to counsel for the individual who had the right to, and did, pursue this wrongful death action.

I also can find no justification for a remand to determine if the widow's counsel is entitled to his contract fee of a contingent one-third. In personal injury/wrongful death litigation, contingent fee arrangements have become commonplace. *See Alexander v. Inman*, 903 S.W.2d 686, 696 (Tenn. Ct. App. 1995). "[C]ourts have enforced [contingent fee arrangements] in personal injury and wrongful death cases without much discussion." *Id*. The cases that do discuss the trial court's prerogative in evaluating the reasonableness of a contingent fee have been in situations much different from the one now before us. *See, e.g., White v. McBride*, 937 S.W.2d 796, 801 (Tenn. 1996) (holding that a contingent fee in a *probate case* "was clearly excessive"); *Alexander*, 903 S.W.2d at 698 (holding that a contingent fee in a *divorce case* is not *per se* unreasonable, but that the trial court has the prerogative of determining whether, in such a case, "contingent fees are reasonable"); *Dole v. Wade*, 510 S.W.2d 909, (910,912) (Tenn. 1974) (holding, in a *suit on* a *note*, that a court has the power to determine whether a stipulated fee "by percentage, or otherwise" is reasonable); *Hall v. Davis*, C/A No. 01A01-9404-CV-00146, 1994 WL 514139 at \*1 (Tenn. Ct. App. M.S., filed September 21, 1994) (holding, in a *suit to collect a child support arrearage*, that an attorney can contract for a contingent fee but that the reasonableness of the fee is subject to the trial court's approval.)

In the instant case, neither side contends that a one-third contingent fee contract under the circumstances of this case is unreasonable. Both sides had such a contract. Assuming, without deciding, that a trial court has a role to play on the subject of fees where a plaintiff *sui juris* knowingly and voluntarily enters into a standard contract for a one-third contingent fee in a wrongful death case, there is nothing in this record to indicate that such a fee is other than reasonable.

I respectfully dissent.

_____
CHARLES D. SUSANO, JR., JUDGE