# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### NOVEMBER 28, 2001 Session

## ROBERT LEWIS DAVIDSON, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF JOYCE DAVIDSON, DECEASED, ET AL v. Charles R. Lindsey, ET AL.

### Direct Appeal from the Circuit Court for Henry County
### No. 1365; The Honorable Julian P. Guinn, Judge

---

### No. W2000-02891-COA-R3-CV - Filed May 6, 2002

---

This appeal arises from an automobile accident involving the Appellants and the Appellees in which the Appellee's wife was killed and the Appellee was seriously injured. The Appellee, individually and as administrator of the estate of his wife, and the Appellee's children filed a complaint in the Circuit Court of Henry County against the Appellants and three of the Appellees. Following a jury trial, the jury found that the Appellants were 100% liable for the accident and dismissed the claims against the three Appellees. The jury awarded the Appellee $1,250,000.00 and awarded the estate of the Appellee's wife $500,000.00. The trial court entered a judgment on the jury's verdict. The Appellants filed a motion for a new trial. The trial court denied the motion for a new trial.

The Appellants appeal the jury verdict and denial of the motion for a new trial entered by the Circuit Court of Henry County. For the reasons stated herein, we reverse and remand for a new trial in accordance with this opinion.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

Russell E. Reviere, Michael L. Mansfield, Jackson, TN, for Appellants

Edward L. Martindale, Jr., Jackson, TN, for Appellee Davidson

Raymond G. Prince, Nashville, TN, for Appellees Jason R. Ross and Alan P. Ross

Fred N. McLean, Paris, TN, for Appellee Charles R. Lindsey

**OPINION**

**I. Facts and Procedural History**

On July 27, 1998, the Appellee, Robert Lewis Davidson ("Mr. Davidson"), and his wife, Joyce Davidson ("Mrs. Davidson" or collectively "the Davidsons"), were traveling north on Highway 79 from McKenzie, Tennessee to Paris, Tennessee in a truck driven by Mr. Davidson. The Appellant, Allen Briggs ("Mr. Briggs"), was at his home in Paris waiting for a phone call from the Appellant, Southland Transportation, directing him where to pick up his first load of the week. Mr. Briggs owned and operated a semi-tractor truck which was leased to Southland Transportation. Southland Transportation called Mr. Briggs and directed him to pick up a load in Jackson.

Mr. Briggs traveled down Highway 218, the by-pass around Paris, and stopped at a stop sign where Highway 218 intersects with Highway 79. At the stop sign, the Appellee, Charles Lindsey ("Mr. Lindsey"), was immediately in front of Mr. Briggs. Both Mr. Lindsey and Mr. Briggs turned left onto Highway 79 traveling south. After Mr. Lindsey and Mr. Briggs turned onto Highway 79, the Appellee, Jason Ross ("Mr. Ross"), passed Mr. Briggs. The three vehicles continued traveling south on Highway 79 with Mr. Lindsey in front of Mr. Ross and Mr. Ross in front of Mr. Briggs.

There is a one-half mile portion of Highway 79 near the Routon community where the highway becomes two lanes for traffic traveling south and one lane for traffic traveling north. As Mr. Lindsey, Mr. Ross, and Mr. Briggs approached the three-lane portion of Highway 79, Mr. Ross proceeded into the right lane of the two lanes for southbound traffic. Mr. Briggs moved into the area behind Mr. Lindsey in the left lane that had been vacated by Mr. Ross. Mr. Lindsey then proceeded into the right lane, and Mr. Briggs moved towards the area in the left lane vacated by Mr. Lindsey. As Mr. Lindsey proceeded into the right lane, he collided with Mr. Ross. Mr. Lindsey then pulled back into the left lane and collided with Mr. Briggs. Mr. Briggs skidded across the center line of Highway 79 and collided with a vehicle driven by Juan Calderon ("Mr. Calderon").[1] After colliding with Mr. Calderon, Mr. Briggs collided with the Davidsons. Mrs. Davidson was killed instantly, and Mr. Davidson sustained serious injuries.

On June 7, 1999, Mr. Davidson, individually and as administrator of the estate of Mrs. Davidson, and the Davidsons' children, Dianne Cook, Sandra Davidson, Donald Davidson, Gary Dean Davidson, and Robert Dale Davidson, (collectively "the plaintiffs") filed a complaint in the Circuit Court of Henry County against Mr. Lindsey, Mr. Ross, Alan Ross,[2] Mr. Briggs, and Southland Transportation (collectively "the defendants"). The complaint alleged that the defendants were negligent in the operation of their vehicles which proximately caused the accident. Mr.

---

[1]Mr. Calderon was not a party to this lawsuit.

[2]Alan Ross is the father of Jason Ross and was sued under the family purpose doctrine.

-2-

Davidson claimed that he was entitled to damages for past and future medical expenses, past and future pain and suffering, impairment of earning capacity, lost wages, past and future emotional injuries, past and future loss of the enjoyment of life, injuries, property damages, and loss of consortium. As administrator of Mrs. Davidson's estate, Mr. Davidson claimed that the estate was entitled to damages for the pecuniary value of Mrs. Davidson's life, medical and funeral expenses, pain and suffering, prejudgment interest, and damages under the wrongful death statute. The Davidsons' children claimed that they were entitled to damages for loss of consortium. The plaintiffs requested compensatory damages in the amount of $1,625,000.00. Each of the defendants filed answers to the complaint.

On February 9, 2000, the plaintiffs filed a motion to amend the ad damnum clause of the complaint to request compensatory damages in the amount of $5,000,000.00. On February 11, 2000, Mr. Briggs and Southland Transportation filed a motion to dismiss the individual claims of the Davidsons' children, claiming that the decision of Jordan v. Baptist Three Rivers Hospital, 984 S.W.2d 593 (Tenn. 1999), failed to create a separate cause of action for a child's loss of consortium. The motion to dismiss further claimed that Jordan did not apply retroactively to provide for claims of spousal and parental consortium in this case. Mr. Briggs and Southland Transportation also filed a motion in limine to request that the trial court exclude any evidence concerning Mr. Briggs's and Alan Ross's post-accident activities. On February 24, 2000, the plaintiffs filed a motion to amend the complaint to allege that Mr. Briggs was negligent in violating section 55-10-103 of the Tennessee Code, the duty to give information and render aid.

On April 27, 2000, the trial court heard all four motions. The trial court granted the motions to amend the complaint. The trial court denied the motion in limine. The trial court orally denied the motion to dismiss with regard to the retroactivity of the Jordan case. The parties agreed to dismissal of the children as party plaintiffs. On July 13, 2000, the plaintiffs filed a motion in limine to preclude reference to the fact that certain of Mr. Davidson's medical expenses and Mrs. Davidson's funeral expenses had been paid by insurance and/or Medicare. On July 24, 2000, the trial court granted the motion in limine.

On July 26 and 27, 2000, a jury trial was held. At the conclusion of the trial, the jury found that Mr. Briggs and Southland Transportation were 100% liable for the accident and dismissed the claims against Mr. Lindsey, Mr. Ross, and Alan Ross. The jury awarded Mr. Davidson $1,250,000.00 and awarded the estate of Mrs. Davidson $500,000.00. The trial court entered a judgment on the jury's verdict.[3] On September 13, 2000, Mr. Briggs and Southland Transportation filed a motion for a new trial. On October 10, 2000, the trial court held the hearing on the motion for a new trial. The trial court denied the motion for a new trial. On November 1, 2000, Mr. Briggs and Southland Transportation filed a motion to set the amount of bond required to stay execution of

---

[3]On September 26, 2001, the trial court entered an amended judgment, dismissing with prejudice the cause of action brought on behalf of the Davidsons' children pursuant to the Tennessee Supreme Court decision of Jordan v. Baptist Three Rivers Hospital, 984 S.W.2d 593 (Tenn. 1999).

the judgment pending the appeal.  On November 9, 2000, the trial court held a hearing on the motion.  On November 15, 2000, the trial court denied the motion.[4]  This appeal followed.

## II.  Law and Analysis

The following issues are presented for our review:

1. Whether the trial court properly discharged its duty as thirteenth juror to independently weigh the evidence presented at trial and determine whether such evidence preponderated in favor of or against the jury's verdict in ruling upon Mr. Briggs and Southland Transportation's motion for a new trial;
2. Whether the trial court erred by allowing counsel to inquire of Mr. Briggs on cross-examination whether he rendered assistance to the Davidsons immediately following the accident, or whether his hand was injured in the accident, and allowing other witnesses to testify at trial with regard to such matters;
3.  Whether the trial court erred by allowing witnesses to testify at trial with regard to facts concerning the activities of Mr. Ross and the occupants of his vehicle to free the Davidsons from their vehicle following the accident beyond those facts necessary to describe the accident scene and, to some extent, the nature of Mr. Davidson's injuries immediately following the accident;
4.  Whether the trial court erred by allowing Trooper Sexton to testify concerning statements allegedly made to him following the accident;
5.  Whether the jury's apportionment of 100% liability against Mr. Briggs and Southland Transportation is clearly erroneous and not supported by material evidence;
6.  Whether the trial court erred by failing to instruct the jury that they should consider the ages of the Davidsons' children in determining whether the children were entitled to loss of consortium damages as a result of Mrs. Davidson's death; and
7.  Whether the amount of the jury's verdict is supported by material evidence.
We will examine each issue in turn.

### Motion for a New Trial

The first issue presented for our review is whether the trial court properly discharged its duty as thirteenth juror to independently weigh the evidence presented at trial and determine whether such evidence preponderated in favor of or against the jury's verdict in ruling upon Mr. Briggs and Southland Transportation's motion for a new trial.  Where the trial judge has approved the jury's verdict on a motion for a new trial, our standard of review is whether there is any material evidence to support the verdict.  See TENN. R. APP. P. 13(d). This standard is not applicable, however, "unless the trial judge properly fulfills his duty as 'thirteenth juror.'" Shivers v. Ramsey, 937 S.W.2d 945,

---

[4]On November 28, 2000, Mr. Briggs and Southland Transportation filed a motion in this Court seeking review of the trial court's denial of the motion to stay execution of the judgment pending appeal.  On December 18, 2000, this Court granted the motion and allowed Mr. Briggs and Southland Transportation fifteen days in which to file a bond in the amount of one million dollars to stay execution of the judgment pending appeal. On January 12, 2001, Mr. Briggs and Southland Transportation filed a one million dollar bond with the trial court.

947 (Tenn. Ct. App. 1996). A motion for a new trial requires the trial judge to perform the function of thirteenth juror. See Ridings v. Norfolk S. Ry. Co., 894 S.W.2d 281, 288 (Tenn. Ct. App. 1994). As the thirteenth juror, "the trial judge is under a duty to independently weigh the evidence and determine whether the evidence preponderates in favor of or against the verdict." Shivers, 937 S.W.2d at 947.

We must presume that the trial judge adequately performed his function as thirteenth juror when he simply approves a jury verdict without comment when ruling on a motion for a new trial. See Sholodge Franchise Sys., Inc. v. McKibbon Bros., Inc., 919 S.W.2d 36, 41 (Tenn. Ct. App. 1995). In the event that the trial judge does state his reasons, an appellate court is to examine them only for the purpose of determining whether the trial court properly reviewed the evidence and was satisfied or dissatisfied with the verdict. See Cumberland Tel. & Tele. Co. v. Smithwick, 79 S.W. 803, 805 (Tenn. 1904). If in discharging his duty as thirteenth juror, the trial judge makes comments which indicate that he has misconceived his duty or clearly has not followed it, this court must reverse and remand the case for a new trial. See Holden v. Rannick, 682 S.W.2d 903, 905 (Tenn. 1984); James E. Strates Shows, Inc. v. Jakobik, 554 S.W.2d 613 (Tenn. 1977); Mize, 468 S.W.2d at 733.

In the case at bar, Mr. Briggs and Southland Transportation argue that the trial judge failed to properly discharge his duty as thirteenth juror. Mr. Briggs and Southland Transportation claim that the trial judge's comments made during the trial and while ruling on the motion for a new trial and the motion to set the amount of bond required to stay execution of the judgment pending the appeal showed that he did not independently weigh the evidence in the case when acting as thirteenth juror. Rather, Mr. Briggs and Southland Transportation assert that the trial judge was biased against their insurance carrier and approved the jury verdict in order to send a message to the insurance carrier to settle the case.

At the close of the proof on the first day of trial, the trial judge made the following comments to the parties' attorneys:

> Trial Judge: Gentlemen, let me ask you, didn't I order this case into mediation somewhere earlier?
>
> Mr. Martindale: Yes, sir.
>
> Trial Judge: Who mediated it?
>
> Mr. Martindale: Judge McGinley.

Trial Judge: Judge McGinley was the mediator?

Mr. Martindale: Yes, sir.

Trial Judge: The reason I pose that question to you is, you're all experienced attorneys. I mean, this is not your first time down the path. And from time to time you see cases, perhaps not that often, but you see cases that ought to be settled. And this, quite obviously, is one of those cases. I obviously have enough calluses to know that many times cases that should be settled, aren't settled. And they are many times not settled for the wrong reasons. I realize that there can be recalcitrant plaintiffs. And sometimes there's stubborn defendants. And I suspect from time to time there might even be a case where, perhaps, everybody didn't understand their positions, their weaknesses and their strengths. I say that, and certainly wouldn't suggest that it's the attorneys. But I think perhaps you really want to reevaluate your positions, and maybe take a few minutes to talk to each other and make sure that everybody has got their best offers up on top of the table here. It would be very interesting to see what the jury will do with the case. But, you know, I see a whole lot of interesting cases and I suspect that you do, too. And justice says that if it can be settled, then it ought to be settled. I'd like to make sure that everybody has done what they ought to have done here. And I'm not suggesting for one moment that you haven't. You know, sometimes there's slight inflection of a word that is misinterpreted. And people think, well, they've stopped there, and I ain't going to be the one to make the next overture. You need to make sure that you got all your money on the table. Particularly now that you've got all the facts before the jury.

At the October 10, 2000 hearing on the motion for a new trial, the trial judge stated the following:

> [Y]ou were given a file that some insurance adjuster or appraiser either was unable or inexplicably refused to evaluate. I'm aware of that.
>
> * * *
>
> The facts were so bad that after this case was over, I sought out Judge McGinley, who I had had mediate this matter, to remonstrate with him as to why this case had not been settled. If there was ever a case begging for settlement, this was it. Incidentally, Judge McGinley is very good about settling these. He had no explanation, other than it was an adamant feeling on both behalf of the plaintiff and the defendant. It was his feeling that had he been able to coerce a reasonable offer, that the plaintiff would have been coerced to take a reasonable offer. Judge McGinley is pretty good at this. As I say, I went to him to remonstrate with him for not settling it. This case should have been settled.
>
> * * *
>
> I would suspect that a wise plaintiff might be talking about some settlement. The question is, can I get a wise defendant. He's been forewarned now. I know how you handle cases, Mr. Reviere. Perhaps you might ought to knock somebody around a little bit.

The trial judge again discussed the issue of settlement during the November 9, 2000 hearing on the motion to stay execution of the judgment.

> Trial Judge: Let me ask you – it has bothered me in this case since it's inception, of why it didn't settle. Was this million dollars offered to the plaintiff?

-7-

Mr. Reviere: I guess we're waiting.  I understood that the discussions and mediation are supposed to be kept in confidence.  But I was . . .

Trial Judge: Well, I think I'd like to consider that, because I strongly detect an insurance company that has gone beyond the realm of recalcitrance.  Knowing the facts, or they should have known the facts in this case, they should have been up there, cramming the million dollars down these plaintiffs' throats.  Now, the plaintiff can pound their chest all they want to and say, "Well, we ain't going to accept that or we wouldn't accept it," but he would have been an utter fool if he didn't, and he would have perhaps been sued for malpractice somewhere along the line.  But I detect an unwillingness to deal.  I detect an unwillingness to get this case to its ultimate conclusion, to hold it off, to not settle the case.

* * *

I don't see that, now that we've got judgment here – what did they offer the man?  Did they ever offer anything near the million?

Mr. Reviere: Well, I'm answering this because Your Honor has put the question to me, and as an officer of the court I am responding.  I guess I have to say at the outset, it was my understanding that this is not, this was supposed to be, under the rules, kept in confidence.  But I will answer your question.

Trial Judge: Well, it's kept from the court prior to trial.  And what I'm attempting to do is to evaluate and see if there was a good-faith attempt to settle, or as I strongly have suspected all along, there was not.
* * *
I remember remonstrating with you gentlemen after the jury came

back with – no, I guess it was on the Motion for New Trial, and suggesting that now that the adrenaline had subsided and the emotions had eased, that you look to settling this case. I assume that settlement negotiations were to no avail, or I wouldn't have you in here today. Were there any?

Following the hearing on the motion to stay execution of the judgment, the trial judge denied the motion and stated as its primary reason the following:

I'm of the opinion, and remain of the opinion, that this insurance company has not negotiated in good faith, that they were attempting to delay this case and they are attempting at this time to obtain the benefits of the very situation that they created, that is essentially, a free appeal, having a case that should have been settled and could have been settled.

In its order denying the motion, the trial court stated that "the liability insurance carrier of the movants, Harco National Insurance Company, failed to negotiate in good faith to conclude this matter by settlement and is now attempting to take advantage of its earlier improper actions to the sole detriment of the plaintiffs."

On several occasions throughout this case, the trial judge adamantly stated that Mr. Briggs and Southland Transportation's insurance carrier should have settled with the plaintiffs. The trial judge said that the insurance carrier acted improperly and failed to negotiate a settlement in good faith. He even went so far as to inquire into confidential settlement conferences between Judge McGinley and the parties. From the totality of the trial judge's comments and actions during the case, we find an appearance of bias against Mr. Briggs and Southland Transportation due to the failure of settlement between their insurance carrier and the plaintiffs. As a result, we are unable to find that the trial judge could objectively and properly discharge his duty as thirteenth juror to independently weigh the evidence. Accordingly, we must reverse and remand for a new trial in accordance with this opinion.

Because we reverse and remand for a new trial , we decline to reach the remaining issues presented to us on appeal.

### III. Conclusion

For the foregoing reasons, the decision of the trial court is reversed, and the case is remanded for a new trial in accordance with this opinion. Costs of this appeal are taxed equally against the Appellants, Allen L. Briggs and Southland Transportation, and their surety, and the Appellees, Robert Lewis Davidson, Dianne Cook, Sandra Davidson, Donald Davidson, Gary Dean Davidson, Robert Dale Davidson, Charles R. Lindsey, Jason R. Ross, and Alan P. Ross, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE