# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 12, 2010 Session

## RENT-N-ROLL v. HIGHWAY 64 CAR AND TRUCK SALES

**Direct Appeal from the Circuit Court for Madison County**
**No. C-10-12     Roger A. Page, Judge**

---

**No.  W2010-01115-COA-R3-CV - Filed November 16, 2010**

---

Appellee sold a vehicle to a third party, retaining a security interest duly perfected on the vehicle's certificate of title.  Appellant later leased custom wheels and tires to the third party without the knowledge or consent of Appellee.  After the lease was signed, Appellant modified the body of the vehicle to accommodate the custom wheels and tires, installed the custom wheels and tires on the vehicle, and gave the third party the old wheels and tires.  The third party defaulted on both the security agreement with Appellee and the lease with Appellant.  Appellee repossessed the vehicle and refused to relinquish the custom wheels and tires to Appellant.  The third party could not be located for service of process or recovery of the old wheels and tires.  Appellant sued for recovery of the custom wheels and tires.  The trial court found that, pursuant to Tenn. Code Ann. § 47-2A-310, the wheels and tires became accessions at the point of installation, Appellant's leasehold interest in the accessions was superior to Appellee's security interest in the vehicle as a whole, and Appellant was liable for physical injury it caused to the vehicle when installing the accessions. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Kate E. Rhodes, Paris, Tennessee, for the appellant, Rent-N-Roll.

R. Bradley Sigler, Jackson, Tennessee, for the appellee, Highway 64 Car and Truck Sales.

## OPINION

## I. Background

The parties have stipulated to the following facts. On June 2, 2009, Appellee Highway 64 Car and Truck Sales ("Highway 64 Auto") sold a 1999 Ford Crown Victoria ("the vehicle") to Sharon Pugh. Highway 64 Auto financed the purchase of the vehicle for Ms. Pugh by execution of a promissory note and a security agreement. Highway 64 Auto perfected its security interest by noting its lien on the vehicle's certificate of title as required by Tennessee law.

On June 5, 2009, Ms. Pugh and Appellant Rent-N-Roll entered into a Rental Purchase Agreement by which she rented four 24 inch custom wheels; and on June 13, 2009, Ms. Pugh and Rent-N-Roll entered into a second Rental Purchase Agreement by which she rented four 24 inch custom tires (collectively, "the leases"). The rented 24 inch wheels and tires would not fit on the vehicle, which was equipped with 22 inch wheels and tires. Therefore, Rent-N-Roll, with the knowledge and written consent of Ms. Pugh, but without the knowledge or consent of Highway 64 Auto, cut into the body of the vehicle to enlarge each wheel well to accommodate the larger wheels and tires. Before installing the 24 inch wheels and tires, Rent-N-Roll removed the existing 22 inch wheels and tires from the vehicle. Ms. Pugh maintained possession of the 22 inch wheels and tires after removal, and Highway 64 Auto has been unable to recover them from Ms. Pugh.

Pursuant to the leases, Ms. Pugh was to pay Rent-N-Roll $508.83 monthly for the use of the wheels and tires. The terms of the leases were for one month, with automatic monthly renewals upon each payment. Rent-N-Roll maintains that it retained ownership of the wheels and tires at all times during the rental period(s). On July 17, 2009, Ms. Pugh defaulted on both leases with Rent-N-Roll. Ms. Pugh was also in default with Highway 64 Auto, having an outstanding balance of $7,177.16, and on or about July 23, 2009, Highway 64 Auto repossessed the vehicle.[1]

Rent-N-Roll was unable to repossess its custom wheels and tires from Ms. Pugh because Highway 64 Auto had already repossessed the vehicle at the time Rent-N-Roll's repossession attempt was made. Highway 64 Auto has refused to relinquish possession of the custom wheels and tires to Rent-N-Roll. The stipulated cost to restore the vehicle to the

---

[1]Ms. Pugh filed a Chapter 13 bankruptcy petition and requested a "Turnover Complaint," asking that Highway 64 Auto be required to surrender the vehicle back to Ms. Pugh. The bankruptcy court denied Ms. Pugh's turnover request, and allowed Highway 64 Auto to keep and dispose of the vehicle. Rent-N-Roll was not a party to the bankruptcy proceeding.

condition it was in prior to the modifications made by Rent-N-Roll was $3,245.65.[2]

Rent-N-Roll filed suit against Highway 64 Auto and Ms. Pugh in the Madison County General Sessions Court, seeking recovery of its wheels and tires under the lease agreements.[3] The action was dismissed. Rent-N-Roll appealed to the Madison County Circuit Court, and a bench trial was held on March 26, 2010. On April 7, 2010, the circuit court entered its judgment, concluding that:

> A. Tenn. Code Ann. § 47-2A-310 applies to the facts of this matter.
> B. Pursuant to Tenn. Code Ann. § 47-2A-310(1), the 24" wheels and tires became accessions to the vehicle at the point of installation.
> C. Pursuant to Tenn. Code Ann. § 47-2A-310(2), the interest of Rent-N-Roll in the 24" custom wheels and tires rented to Sharon Pugh under the June 5, 2009 and June 13, 2009 Rental Purchase Agreements is superior to the lien holder interest of Highway 64 Auto in the vehicle as a whole.
> D. Tenn. Code Ann. § 47-2A-310(3) and (4) have no application to the facts of this matter.
> E. Pursuant to Tenn. Code Ann. § 47-2A-310(5), Rent-N-Roll is required to reimburse Highway 64 Auto for the cost of repair of the physical injury caused to the vehicle by the modifications made to the vehicle by Rent-N-Roll prior to installation of the custom 24" wheels and tires. Highway 64 Auto may refuse to relinquish possession of the 24" custom wheels and tires to Rent-N-Roll until it receives payment by Rent-N-Roll for cost of repair set forth herein.
>
> It is therefore, ORDERED, ADJUDGED, and DECREED that Defendant, Highway 64 Auto, shall immediately return possession of the 24" custom wheels and tires to Rent-N-Roll upon payment by Rent-N-Roll to Highway 64 Auto of $3,245.65, which is the total cost to repair the physical injury

---

[2]This amount is exclusive of the cost of the wheels and tires.

[3]Ms. Pugh was named as a defendant in the civil suit brought by Rent-N-Roll in the Madison County General Sessions Court. Ms. Pugh could not be located for service of process; therefore, judgment was never entered against her, and she is not a named party in this matter.

caused to the vehicle by the modifications made to the vehicle by Rent-N-Roll prior to installation of the custom 24" wheels and tires.

Rent-N-Roll appeals, arguing that the lower court misinterpreted Tenn. Code Ann. § 47-2A-310(5) when it required Rent-N-Roll to pay for the cost of repairing the vehicle as a condition to the repossession of its custom wheels and tires. Highway 64 Auto contends that the lower court misapplied Tenn. Code Ann. §§ 47-2A-310(2)-(3), and that its security interest in the vehicle as a whole has priority over Rent-N-Roll's leasehold interest in the custom wheels and tires. We restate the issues as follows:

(1) As between the seller of a vehicle, holding a prior perfected security interest noted on the vehicle's certificate of title, and the later lessor of wheels and tires which become accessions to the vehicle without the knowledge or consent of the secured party, which party has priority in the accessions?

(2) Is the lessor liable for physical injury it caused to the vehicle during the installation of the accessions?

## Law and Analysis

As noted above, the parties have stipulated to the facts. Consequently, this appeal involves only the applicability and interpretation of the relevant statutes. Statutory interpretation presents a question of law. Therefore, our review of the trial court's decision is *de novo* upon the record, with no presumption of correctness. ***Jordan v. Baptist Three Rivers Hosp.***, 984 S.W.2d 593, 599 (Tenn. 1999).

Highway 64 Auto first contends that it should prevail because it perfected its security interest pursuant to Tennessee's certificate of title statutes. Highway 64 Auto directs us to Tenn. Code Ann. § 47-9-335(d), which states that "[a] *security interest* in an accession is subordinate to a security interest in the whole which is perfected by compliance with the requirements of a certificate-of-title statute under § 47-9-311(b)." (emphasis added). We find this issue to be without merit, as the plain language of section 47-9-335(d) applies only to a *security interest* in an accession, and not to a leasehold interest in an accession as is the case here.[4] Highway 64 Auto has provided no evidence, nor made any argument, that Rent-N-

---

[4]*See **First Source Bank v. Best-One Tire of Crossville, Inc.***, No. 1:09-CV-36, 2009 WL 2170167, at *2 (E.D. Tenn. 2009) (holding that where plaintiff held a security interest in vehicles perfected by notation (continued...)

Roll's leasehold interest in the wheels and tires is, in fact, a security interest; therefore, we conclude that Tenn. Code Ann. § 47-9-335(d) does not apply to the facts of this case.

Highway 64 Auto next directs us to Tenn. Code Ann. § 47-2A-104(1)(a), which states that "[a] lease, although subject to this chapter, is also subject to . . . the certificate of title statutes in title 55." Highway 64 Auto contends that if the lease between Rent-N-Roll and Ms. Pugh is "subject to . . . the certificate of title statues in title 55," then Highway 64 Auto's perfected security interest (as noted on the vehicle's certificate of title) has priority over Rent-N-Roll's leasehold interest in the wheels and tires. However, Highway 64 Auto's argument misapprehends the intent of Tenn. Code Ann. § 47-2A-104(1)(a).

While it is true that Rent-N-Roll's lease is "subject to" title 55, nothing in title 55 requires Rent-N-Roll to note its leasehold interest in the wheels and tires on the vehicle's certificate of title. More importantly, nothing in title 55 gives priority in leased wheels and tires that become accessions to the holder of a security interest in the vehicle, even if that security interest is noted (as it must be in order to be perfected) on the vehicle's certificate of title. The statutes contained in title 55 simply do not address the issues raised herein, which relate to the parties' relative priority in leased accessions. These issues are specifically addressed in Tenn. Code Ann. § 47-2A-310. "It is a well settled rule of statutory interpretation that the specific controls the general." *Wright v. Tennessee Peace Officer Standards and Training Comm'n*, 277 S.W.3d 1, 16 (Tenn. Ct. App. 2008) (citing *State v. Cauthern*, 967 S.W.2d 726, 735 (Tenn. 1998)). Consequently, we cannot disregard the specific language of Tenn. Code Ann. § 47-2A-310, which deals directly with the issues at hand, on the basis of the exceedingly general language in Tenn. Code Ann. § 47-2A-104(1)(a).[5]

Finding that the certificate of title statutes do not apply to the facts of this case, we next turn to Tenn. Code Ann. § 47-2A-310, which addresses lessor's and lessee's rights when

---

[4](...continued)
on the certificates of title, that interest was superior, pursuant to Tenn. Code Ann. § 47-9-335, to any perfected security interest defendant may have acquired in the accession alone).

[5]We note further that the U.C.C. drafter's comment to Tenn. Code Ann. § 47-2A-310 indicates that the statute was modeled on former U.C.C. § 9-314 (now codified as U.C.C. § 9-335; Tenn. Code Ann. § 47-9-335). Section 9-335, which deals with security interests in accessions (as opposed to leasehold interests in accessions), specifically subordinates a security interest in an accession to a security interest in the whole that is perfected in compliance with the requirements of a certificate-of-title statute. *See* Tenn. Code Ann. § 47-9-335(d). The absence of comparable language in Tenn. Code Ann. § 47-2A-310 is strong evidence of a legislative intent to exclude such a requirement.

goods become accessions.[6]  Section 47-2A-310 was adopted unaltered in Tennessee from the Uniform Commercial Code ("U.C.C.") Article 2A in 1993.  We note at the outset that we

---

[6]Tenn. Code Ann. § 47-2A-310 provides:

**Lessor's and lessee's rights when goods become accessions**
(1) Goods are "accessions" when they are installed in or affixed to other goods.

(2) The interest of a lessor or a lessee under a lease contract entered into before the goods became accessions is superior to all interests in the whole except as stated in subsection (4).

(3) The interest of a lessor or a lessee under a lease contract entered into at the time or after the goods became accessions is superior to all subsequently acquired interests in the whole except as stated in subsection (4) but is subordinate to interests in the whole existing at the time the lease contract was made unless the holders of such interests in the whole have in writing consented to the lease or disclaimed an interest in the goods as part of the whole.

(4) The interest of a lessor or a lessee under a lease contract described in subsection (2) or (3) is subordinate to the interest of

(a) a buyer in the ordinary course of business or a lessee in the ordinary course of business of any interest in the whole acquired after the goods became accessions; or

(b) a creditor with a security interest in the whole perfected before the lease contract was made to the extent that the creditor makes subsequent advances without knowledge of the lease contract.

(5) When under subsections (2) or (3) and (4) a lessor or a lessee of accessions holds an interest that is superior to all interests in the whole, the lessor or the lessee may (a) on default, expiration, termination, or cancellation of the lease contract by the other party but subject to the provisions of the lease contract and this chapter, or (b) if necessary to enforce his or her other rights and remedies under this chapter, remove the goods from the whole, free and clear of all interests in the whole, but he or she must reimburse any holder of an interest in the whole who is not the lessee and who has not otherwise agreed for the cost of repair of any physical injury but not for any diminution in value of the whole caused by the absence of the goods removed or by any necessity for replacing them. A person entitled to reimbursement may refuse permission to remove until the party seeking removal gives adequate security for the performance of this obligation.

have found no Tennessee cases interpreting this statute, nor any cases from our sister states interpreting the U.C.C. statute as adopted. Therefore, the issues relating to our interpretation of Tenn. Code Ann. § 47-2A-310 are matters of first impression. Our Supreme Court has stated that in interpreting statutes, courts are to "give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." ***Owens v. State***, 908 S.W.2d 923, 926 (Tenn. 1995). The courts should determine intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." ***State v. Flemming***, 19 S.W.3d 195, 197 (Tenn. 2000). Further, the rules of statutory construction direct courts not to "apply a particular interpretation to a statute if that interpretation would yield an absurd result." ***State v. Sims***, 45 S.W.3d 1, 11 (Tenn. 2001).

In this case, the parties do not dispute that the wheels and tires became accessions under subsection (1) when they were installed on the vehicle. However, the parties dispute whether priority in the wheels and tires is resolved by reference to subsection (2), under which Rent-N-Roll has priority, or under subsection (3), under which Highway 64 Auto has priority. Thus, the determinative issue as to priority, under Tenn. Code Ann. § 47-2A-310(2) and (3), is whether the lease contract between Rent-N-Roll and Ms. Pugh was "entered into *before* the goods became accessions" or whether it was "entered into *at the time* or *after* the goods became accessions." (emphases added).

As stated in the stipulated facts, Ms. Pugh signed leases with Rent-N-Roll on June 5, 2009, in which she rented four 24 inch wheels, and June 13, 2009, in which she rented four 24 inch tires. The wheels and tires were installed, and therefore became accessions, some time on June 13, 2009. In its findings of fact, the trial court found that the wheels and tires were installed after the lease was signed, and therefore, ruled that subsection (2) gave Rent-N-Roll priority. Nothing in the stipulated facts contradicts this finding. Highway 64 Auto does not appear to dispute that, in terms of temporal proximity, the leases were signed prior to installation. However, Highway 64 Auto urges this Court to view the signing of the leases and the installation of the wheels and tires as one transaction occurring "at the time . . . the goods became accessions." Highway 64 Auto contends that "at the time . . . the goods became accessions" should be read to mean *during the time* "the goods became accessions," which would encompass the entirety of the transaction. In its brief, Highway 64 Auto argues that "[i]t is immaterial that the lease may have been 'signed' immediately before, or five (5) minutes before, or ten (10) minutes before the tires and rims were physically placed upon the vehicle. They were all part of the same transaction."

We decline to accept Highway 64's expansive definition of "at the time." Rather, we believe the plain language of the statute requires us to consider the temporal proximity between the time that the leases were signed and the time that the accessions were installed

on the vehicle. The distinction between "before" and "at the time" or "after" is not, as Highway 64 Auto contends, immaterial, but rather, the very device that the statute uses to determine priority. If this Court were to interpret "at the time" to include all portions of the relevant transaction (in this case spanning over a week), then subsection (2) would be rendered virtually meaningless because leases signed weeks or months before installation could be said to have occurred during the same transaction.

We find support for our interpretation of Tenn. Code Ann. § 47-2A-310(2)-(3) in the treatises addressing U.C.C. § 2A-310. Hawkland and Miller's treatise states:

> When is the lease contract made? Under a literal reading it is when the lease becomes a binding contract. Thus, if the lease is signed before the goods are installed, as would be common, this priority rule would apply. . . . [T]he case where the goods are leased and become an accession at [the] same time would be unusual to say the least.

3 HAWKLAND & MILLER, U.C.C. SERIES § 2A-310:2 n.8 (2010).[7]

We conclude that the leases between Rent-N-Roll and Ms. Pugh became binding contracts before the wheels and tires were installed on the vehicle, thus, subsection (2) controls. Subsection (2) provides that Rent-N-Roll's leasehold interest in the accessions "is

---

[7]Likewise, *Anderson on the Uniform Commercial Code* takes a literal reading of the statute:

> When the lease is entered into before the goods become accessions, the parties to the lease have priority over all competing interests in the whole. No distinction is made in terms of whether the conflicting interest arose before or after the lease was entered into or after the goods became accessions.
> . . . .
>
> When the lease is entered into after the goods become accessions, the interests of the parties to the lease are subordinate to any then existing interests in the whole.
> . . . .
>
> When the lease is made at the same time that the goods become accessions, the priorities of the relative interests are the same as when the lease was entered into after the goods had become accessions.

5 LARY LAWRENCE, ANDERSON ON THE UNIFORM COMMERCIAL CODE §§ 2A-310:11-12, 14 (3d ed. 2001).

superior to all interests in the whole except as stated in subsection (4)."[8]  Subsection (4) provides exceptions for later buyers and lessees of the whole in the ordinary course of business, and innocent secured parties making subsequent advances against the whole.[9] None of these scenarios are supported by the facts of this case.  Thus, under the plain language of the statute, Rent-N-Roll's leasehold interest in the wheels and tires is superior to Highway 64 Auto's security interest in the vehicle.[10]

However, this determination does not end our inquiry.  Rent-N-Roll appeals the trial court's award of damages, claiming that the court misapplied Tenn. Code Ann. § 47-2A-310(5).  In disputing its liability for these damages, Rent-N-Roll argues that: (1) it received permission from Ms. Pugh to modify the vehicle by enlarging the wheel wells and is thus not liable for such modifications; (2) the modifications made did not "damage" the vehicle but simply added an aesthetic desirable to some customers; and (3) it is liable only for physical injury caused by removal of the wheels and tires and not for alleged damage caused prior to removal.  We find each of these arguments to be without merit.

Rent-N-Roll first argues that, because it received permission to modify the vehicle from its owner, Ms. Pugh, it is not required to reimburse Highway 64 Auto for any physical injury to the vehicle.  Rather, Rent-N-Roll maintains that Highway 64 Auto's remedy should come from Ms. Pugh.  Highway 64 Auto may well have a cause of action against Ms. Pugh under its security agreement; however, subsection (5) explicitly deals with the situation at hand, where the secured party in the whole lacks knowledge of the accession.  Under subsection (5), it is simply immaterial whether Ms. Pugh gave her permission.

As to the alleged aesthetic enhancements made to the vehicle by cutting the wheel wells to accommodate larger wheels, we note that this is not a concept embodied in subsection (5).  Rather, according to the statute, the lessor, if it wishes to recover its accessions, must reimburse the owner of an interest in the whole "for the cost of repair of any physical injury."  It is immaterial whether the physical injury caused to the vehicle enhanced its value to hypothetical customers.  Rent-N-Roll appears to be arguing that no physical

---

[8]Tenn. Code Ann. § 47-2A-310(4).

[9]Id.

[10] We note that this result largely comports with Tennessee law prior to the adoption of U.C.C. Article 2A.  *Compare* **Blackwood Tire & Vulcanizing Co. v. Auto Storage Co.**, 182 S.W. 576 (Tenn. 1916) (holding that  the seller of tire casings who did not retain title at the time of sale cannot recover against the seller of the vehicle who retained title and repossessed the vehicle after default) *and* **Turner v. Superior Tire Serv.**, 9 Tenn. App. 597 (Tenn. Ct. App. 1929) (holding that tires did not become accessions where the seller retained title at the time they were placed on the car).

injury to the vehicle occurred; however, the record does not support Rent-N-Roll's position. Photographs contained in the record show that the body of the vehicle was cut into in order to enlarge the wheel wells to accommodate the larger turning radius of 24 inch wheels. The parties' stipulated to an amount of damages equal to the estimated cost to repair the body of the vehicle to its original condition. Rent-N-Roll denied liability under the statute, but it did not deny that physical injury to the vehicle had occurred, nor did Rent-N-Roll deny that it had caused the physical injury.

Rent-N-Roll finally argues that subsection (5) only provides for damages to the vehicle incurred during removal of the accessions, and not for any damages incurred during their installation. We disagree. Subsection (5) provides for reimbursement for "the cost of repair of any physical injury but not for any diminution in value of the whole caused by the absence of the goods removed or by any necessity for replacing them."[11] Thus, subsection (5) requires reimbursement for "the cost of repair of any physical injury" that does not fit into either of two exceptions: (1) the diminution in value of the vehicle caused by the absence of the wheels and tires; or (2) the cost of replacing the wheels and tires. In order to make the vehicle marketable, Highway 64 Auto will no doubt have to replace the wheels and tires, and the vehicle's value is decreased in their absence. However, the damages that Highway 64 Auto seeks are for the physical injury to the body of the vehicle only, and thus do not fall into either of these exceptions. We are, therefore, left with the plain language of the statute, which requires reimbursement for "the cost of repair of *any* physical injury." The expansive term "any" places no limitation on the time that the physical injury was incurred, and we decline to read a time limitation into the statute. Thus, we interpret the phrase "any physical injury" to include physical injury to the vehicle incurred both during the installation of the accession and during its removal. In this case, the stipulated damages represent the cost of repairing the physical injury to the vehicle incurred during the installation of the wheels and tires. Thus Rent-N-Roll must reimburse Highway 64 Auto for this amount if it wishes to recover its wheels and tires. Likewise, under subsection (5), Highway 64 Auto may refuse permission to remove the wheels and tires until Rent-N-Roll provides adequate security.[12]

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to the Appellant, Rent-N-Roll, and its surety, for which execution may issue if necessary.

---

[11]Tenn. Code Ann. § 47-2A-310(5).

[12]Id.

_____
J. STEVEN STAFFORD, JUDGE